**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DEBORAH O'NEAL, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | )    Case No. CIV-07-538-L |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| **Commissioner of Social** | ) |
| **Security Administration,** | ) |
| | ) |
|     **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Deborah O'Neal ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

**Administrative Proceedings**

Plaintiff initiated these proceedings by filing her application seeking disability insurance benefits in February, 1996 [Tr. 97 - 101], alleging that she suffered from Reflex Sympathetic Dystrophy Syndrome ("RSDS")[1] with resulting pain, limitations in standing,

---

[1] As explained by Social Security Ruling 03-2p, Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome, 2003 WL 22399117 ("SSR 03-2p"),

RSDS/CRPS is a chronic pain syndrome most often resulting from trauma to a single

(continued...)

walking and sitting, and drowsiness from medication, all of which became disabling as of April 26, 1994 [Tr. 103]. Following initial denial of her claim [Tr. 80 - 83 and 86 - 88], an administrative hearing [Tr. 31 - 77], and an unfavorable hearing decision [Tr. 19 - 27], that unfavorable decision was affirmed on appeal to this court [Tr. 560 - 564]. The Tenth Circuit Court of Appeals subsequently reversed this court's decision and ordered remand of the matter to Defendant [Tr. 554 - 559].[2]

In June of 2002, the Appeals Council of the Social Security Commission, in turn, ordered remand to an Administrative Law Judge ("ALJ") for further proceedings [Tr. 570 - 571]; a second hearing was conducted in September, 2002 during which Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 780 - 818]. In her March, 2005 decision, the ALJ found that Plaintiff retained the capacity to perform work available in the national economy and, consequently, was not disabled within the meaning of the Social Security Act [Tr. 449 - 472]. Based on stated findings, the Appeals Council declined to assume jurisdiction by decision dated April 7, 2007 [Tr. 371 - 374], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

---

[1](...continued)
extremity. It can also result from diseases, surgery, or injury affecting other parts of the body. Even a minor injury can trigger RSDS/CRPS. The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. Later, spontaneously occurring pain may be associated with abnormalities in the affected region involving the skin, subcutaneous tissue, and bone. It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual. When left untreated, the signs and symptoms of the disorder may worsen over time.

*Id.* at *1.

[2]Meanwhile, in June, 2001, Plaintiff submitted a new application for disability insurance benefits [Tr. 572 - 574] as well as an application seeking supplemental security income payments [772 - 773].

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v.*

*Heckler*, 754 F.2d 326, 328 (10th Cir. 1985).  Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.  *Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

Plaintiff maintains that the ALJ (1) erred in applying the treating physician rule to the opinions of one Plaintiff's physicians; (2) failed to comply with SSR 03-2p in her assessment of Plaintiff's disability; and, (3) erred in her evaluation of Plaintiff's credibility.  Because remand is required as a result of the ALJ's failure to properly apply the treating physician rule in assessing the opinions of Plaintiff's pain management physician, Dr. Legako, the undersigned has not addressed Plaintiff's remaining claims of error.  *See generally Watkins v. Barnhart,* 350 F.3d 1297, 1299 (10th Cir. 2003).

**Analysis**

The medical records reflect that Ronal D. Legako, M.D., first saw Plaintiff in August, 1995 for complaints of left leg pain [Tr. 728].  On examination, Dr. Legako concurred with previous physicians' diagnosis of RSDS,[3] finding some inversion of the

---

[3] In August, 1994, one of these other physicians – A. E. Moorad, M.D., – explained his RSDS diagnosis as follows:

> It is my medical opinion that this patient has classic signs and symptoms of reflex sympathetic dystrophy involving her left lower extremity all stemming from her job injury of 11/29/93 while working for Thompson Book Supply.  The fact that she had a positive response to the epidural injection which relieved the pain for a short period of time, the progression of her symptoms after her arthroscopy surgery, the present degree of burning pain and clinical presentation are all highly classic for this syndrome.  This patient has already past [sic] Stage I and she is now starting to exhibit signs and symptoms of Stage II
(continued...)

left foot, coolness of the left leg and tenderness over the left knee. *Id.* The records further reflect that Dr. Legako, who saw Plaintiff on a as-needed basis, provided medication therapy for her chronic pain – adjusting medications and dosages as necessary – on a continuing basis through March, 2006 [Tr. 410, 416 - 417, 419 - 424, 433 - 445, 486 - 492, 523 - 531, 539 - 550 and 690 - 729].

During the course of this lengthy treatment period, Dr. Legako provided opinions on Plaintiff's prognosis and functional capabilities. On July 9, 1999, he completed a residual functional capacity questionnaire [Tr. 335 - 339] where he opined, in part, that Plaintiff suffered from severe leg pain which he treated with medications – including medication with codeine – which can cause dizziness. *Id.* at 335 - 336. He noted further that Plaintiff's level of pain was severe enough to interfere constantly with attention and concentration. *Id.* at 336. Dr. Legako also concluded that Plaintiff's impairments or treatment would cause her to be absent from work more than three times a month. *Id.* at 339. It was the doctor's opinion that Plaintiff had suffered from these limitations since the time he first saw her on August 14, 1995. *Id.*

Dr. Legako reaffirmed his findings in another residual functional capacity questionnaire dated August 15, 2002 [Tr. 494 - 498]. Included with the completed questionnaire was a letter from Dr. Legako in which he stated in part that

---

[3](...continued)
reflex sympathetic dystrophy. This is where we need to be aggressive otherwise these symptoms will get more severe and will progress later on to the point of irreversibility if we do not intervene. It is in my medical opinion that this patient is still temporarily totally disabled and in need of further medical management and treatment.

[Doc. No. 685].

> [Plaintiff] continues to have a great deal of pain and discomfort of her left lower extremity. She also continues to have subjective as well as objective weakness of the left lower extremity. This lady continues to require a considerable amount of medication to control her discomfort. The side effects of the medication itself with drowsiness and decreased cognitive abilities leads to limiting her functioning capacity.

[Tr. 493].

Dr. Legako updated his opinions by letter dated June 6, 2003, while the matter was before the ALJ awaiting her decision:

> You will recall that [Plaintiff's] initial injury evidently occurred around September 24, 1984, when she injured her back. The next injury was approximately November 29, 1993, involving injury to her feet and left leg. She developed reflux [sic] sympathetic dystrophy following this accident. Her second accident January 18, 2002, caused an exacerbation and increase of the pain of these injuries.
>
> [Plaintiff's] condition has deteriorated following her subsequent injury. There has been an increase in pain. This has resulted in an increase in medications and decreased ability to perform her activities of daily living. Her analgesic medication has been increased to the Duragesic patches. The additional pain has lead to increased anxiety and the use of the anxiolytic agent Xanax. She has also had an increased use of hydrocodone for the pain.

[Tr. 532].

Dr. Legako's final opinions are in the following letter – written on January 22, 2004, while Plaintiff's case was still pending decision by the ALJ – which summarizes the course of his treatment of Plaintiff and offers a negative prognosis for her recovery [Tr. 537 - 538]:

> [Plaintiff] has been a patient of mine since 8/14/95. She presented with a history of pain in her left leg. This was apparently due to an automobile accident November 29, 1993. She had significant injury to her left knee. This was operated on by Dr. Jimmy Conway. She later developed continued increasing pain of the left leg. She was subsequently treated by

>   Dr. Andratti and Dr. Mirade.  She was diagnosed, at that time, with Reflex Sympathetic Dystrophy.
>
>   When I first saw her in August of 1995, she was still having some swelling of the left leg.  She was having autonomic instability with changes in skin color and skin temperature.  She reported involuntary movements of the left lower leg.  She was still having a lot of tenderness over the left knee.
>
>   The patient has continued to have severe left leg pain.  She has been treated with numerous modalities in an effort to control the pain.
>
>   Her symptoms have been such that she actually has been unable to maintain any gainful employment.  She is quite uncomfortable and uses a fair amount of medication in an attempt to control the pain.
>
>   It is my opinion that the prognosis for this lady is quite poor.  Unless there are some new developments and treatment, I do not anticipate any major improvement in this lady's condition.

*Id.*

Dr. Legako's opinions concerning the impact of Plaintiff's pain and prescribed narcotic medication on her ability to function in semi-skilled work[4] were the subject of hypothetical questioning of the vocational expert by Plaintiff's counsel at the administrative hearing:

ATTY:   The use of narcotic medications with those side affects previously enumerated, drowsiness, dizziness, nausea, that sort of thing, is that going to prevent, if that's an ongoing everyday, if it affects them 20%, 30 % out of the day, is that going to prevent the more semiskilled work that you've identified?

VE:   Yes.  Because of the loss of focus and concentration.

ATTY:   And if you look at it from the flip-side of that coin, that pain that's there present on a daily basis is such that it is interfering with the ability to concentrate because their mind is focused on the - -

---

[4]The ALJ determined that Plaintiff was able to perform semi-skilled work as a purchasing clerk and skilled work as an assignment clerk [Tr. 471].

7

VE:        Pain.

ATTY:      - - pain throughout the day, that, on the flip-side coin, would that also, would that eliminate the, the, the semi-skilled type work?

VE:        Yes.

[Tr. 815 - 816].

Under the law of the Tenth Circuit, "[a]ccording to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004). A sequential analysis must be undertaken by an ALJ when considering a treating source medical opinion which relates to the nature and severity of a claimant's impairments. *Watkins,* 350 F.3d 1297 at 1300. The first step, pursuant to Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2, is to determine whether the opinion is well-supported by medically acceptable techniques. *Watkins,* 350 F.3d at 1300. At the second step, adjudicators are instructed that "[e]ven if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be 'not inconsistent' with the other 'substantial evidence' in the individual's case record." SSR 96-2p, 1996 WL 374188, at *2. If both of these factors are satisfied with regard to a medical opinion from a treating source, "the adjudicator must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion." *Id.* If, on the other hand, "the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins,* 350 F.3d at 1300.

Once the ALJ determines that a treating source opinion is not entitled to controlling weight, she must consider the weight she does give to such opinion "using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id*. "Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.* at 1300-1301. If she rejects the opinion completely, the ALJ must offer specific and legitimate reasons for so doing. *Id.*; SSR 96-2p, 1996 WL 374188, at *4; *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996).

After her review of the medical evidence in this case, the ALJ concluded that

> Here, Dr. Legako's conclusions not only are not well supported by objective medical clinical and/or laboratory diagnostic findings, as described more above, but a [sic] they are inconsistent with other substantial evidence in the case record.[5] Furthermore, as more fully discussed above, issues of the claimant's residual functional capacity and disability are reserved to the

---

[5] The ALJ's decision points with particularity to the opinions of A.E. Moorad, M.D., whose diagnosis of Plaintiff's RSDS was discussed at n. 3 *supra.* For example, the ALJ notes that Dr. Moorad opined on May 30, 1995, that Plaintiff's RSDS was in remission until it was aggravated by a car accident on January 7, 1999 [Tr. 453, 457, 641 and 648]. It is worth noting that even if Dr. Moorad believed that Plaintiff's RSDS was in complete remission as of May 30, 1995, he also found that significant symptoms of the disease were present following Plaintiff's arthroscopic surgery on April 27, 1994 [Tr. 683 and 685], thus suggesting that Dr. Moorad believed that Plaintiff suffered from the effects of RSDS for a period of time. Moreover, the ALJ's final reference to Dr. Moorad was with regard to his March 22, 1999, treatment note [Tr. 457 and 641]. In that note, Dr. Moorad stated that as a result of the January 7, 1999, accident Plaintiff was experiencing an activation and worsening of her RSDS [Tr. 641]. The most recent note from Dr. Moorad is dated October 4, 1999, indicating only that Plaintiff's "flare up from her RSD from the accident and from her previous RSD is somewhat improved." [Tr. 639]. Thus, there is no indication in the record of whether Dr. Moorad found that the RSDS ultimately resolved.

9

>   Commissioner. Treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.

[Tr. 460].

While the ALJ correctly states that certain issues – residual functional capacity, and whether a claimant is "disabled" or "unable to work," *see* 20 C.F.R. §§ 404.1527 (e) (1) and (3) and 416.927 (e) (1) and (3) – are reserved to the Commissioner and never entitled to controlling weight, clearly not all of Dr. Legako's opinions fall into these categories. For example, Dr. Legako opined that based on the amount and types of medication taken by Plaintiff, Plaintiff was functionally limited by drowsiness[6] and decreased cognitive abilities [Tr. 493]. SSR 03-2p, the Social Security Ruling, specific to RSDS, makes clear that

>   Chronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior, and may even reduce motor reaction times, These factors can interfere with an individual's ability to sustain work activity over time, or preclude sustained work activity altogether. When evaluating duration and severity, as well as when evaluating RFC, the effects of chronic pain and use of pain medications must be carefully considered.

---

[6]One of the physical limitations initially and consistently reported by Plaintiff was of drowsiness from medication [Tr. 103]; at the administrative hearing she described repeatedly falling asleep for short periods of time after sitting for only a few minutes [Tr. 796.]

SSR 03-2p, 2003 WL 22399117, at *5. The ALJ, however, never addressed what weight, if any, she accorded Dr. Legako's opinion on this matter.[7] Such failure constitutes error and remand is required. *See Watkins,* 350 F. 3d at 1300.

### **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, it is recommended that this matter be reversed and remanded for further proceedings in accordance with this report. The parties are advised of their right to object to this Report and Recommendation by March 19, 2008, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 28th day of February, 2008.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE

---

[7]Based on the following statement, it appears that the ALJ dismissed the functional effects of the medications unquestionably prescribed to Plaintiff by Dr. Legako on the theory that any side effects would have abated after several weeks and on the suggestion that Plaintiff was engaged in narcotic-seeking behavior:

> The Administrative Law Judge notes the amount of medications that the claimant takes. Usually, side effects of medications decrease within a period of a few weeks, or doctors will change to other medications with fewer effects. Often, individuals seeking narcotic pain medications and other desired medications allege symptoms making it more likely to receive the desired medications.

[Tr. 465]. Neither rationale finds support in the record and neither constitutes anything more than pure speculation on the part of the ALJ. An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation and emphasis omitted).